DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

APRIL TERM, 1907.

## FIELD ET AL. v. LEITER ET AL.

APPEAL AND ERROR—DEATH OF PARTY—SUBSTITUTION—PARTITION—
PARTIES—LIFE TENANT—REMAINDERMEN—NATURE OF ACTION—
ISSUES—RES JUDICATA—POSSESSION BY EXECUTOR, EFFECT OF ON
PARTITION— PARTITION COMMISSIONERS— PROCEEDINGS— REPORT—
PREPARATION BY COUNSEL—EXCEPTIONS TO REPORT—CONFLICTING
EVIDENCE—EXCLUSION OF LEASEHOLD PREMISES.

1. The death of a plaintiff in error subsequent to the filing of
   the petition in error and issuance of summons in error does
   not abate the proceeding.
2. Upon the suggestion of the death of a plaintiff in error since
   the institution of the proceeding in error, who was such a
   party in his capacity as trustee, the substitution of his suc-
   cessor in trust is proper with the same rights, liabilities and
   purposes as his predecessor.
3. Unless otherwise provided by statute, a partition of estates
   held in remainder only without a present right of possession
   is not enforceable, nor can partition be compelled between
   a tenant in possession and mere remaindermen.
4. In the absence of a statute authorizing it, partition cannot be
   awarded either in equity or at law of an estate in reversion
   or remainder.
5. Partition may be had between the life tenant of an undivided
   part and the owner in fee of the other part, at the suit of
   either.

6. The common law in respect to the persons who may require or be compelled to suffer partition is not enlarged upon by the statute authorizing the remedy between tenants in common and co-parceners.

7. A legal title whether in fee or for life to an undivided part, accompanied by possession or right of possession, entitles the owner to maintain partition against the owner of the remaining part holding the same as tenant in common with him.

8. An action to compel partition is a civil action under the code.

9. The distinction between actions at law and suits in equity are abolished by the code, but not the distinction between legal and equitable rights or legal and equitable relief.

10. Partition under the code is not necessarily to be regarded or designated as exclusively either a legal or equitable proceeding. A particular action may be one or the other or a combination of both, depending upon the nature of the titles asserted and the relief sought.

11. The question of parties in partition is to be settled according to the issues in the case and the relief demanded.

12. The code provision that any person may be made a defendant who has or claims an interest adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of a question involved, does not constitute every one referred to a necessary party to the rendition of a valid judgment; nor does it abolish the distinction between necessary and proper parties. (R. S. 1899, Sec. 3480.)

13. Those having or claiming an interest adverse to the plaintiff are necessary parties, while those merely necessary to a complete determination of a question involved are, as a rule, proper but not necessary parties.

14. The rights of the parties in an action for partition are determined by the order which finds them to be tenants in common, ascertains and adjudges the respective shares and orders a partition thereof, whether such order be deemed interlocutory or final.

15. A defect of parties in partition not affecting the jurisdiction of the court is waived unless the objection is raised by demurrer or answer as required by the general code provisions.

16. In an action for partition between the parties to the suit, those parties only, and others, if any, virtually represented by them, will be bound by the proceedings and judgment.

17. An executor's possession of real estate is only during and for the purpose of administration and not adverse to the heirs

or devisees, and does not prevent the latter from maintaining a suit in partition against other tenants in common; it not appearing that the administration will be prejudiced thereby, and the statute declaring that for the purpose of bringing suit for partition the possession of an executor or administrator is the possession of the heirs or devisees.

18. The owner in fee of an undivided part and the tenant for life of the other part being tenants in common, the former may maintain partition against the latter, at least where the property is capable of partition, without joining the remainderman who is not in possession nor entitled thereto, whether the estate in remainder be vested or contingent, and though the proceeding may not bind the remainder interest.

19. The owner in fee of an undivided part conveyed his interest to another in trust to pay the net income to the grantor during his life, and with power to manage and dispose of the property and to invest and re-invest proceeds; and provided in the deed that upon the grantor's death the trust should cease and that the estate then in the trustee's hands should vest in the grantor's children. The owner in fee of the other undivided part brought an action of partition against said trustee and his grantor, wherein the pleadings admitted the parties to be tenants in common, and the answer consented to partition. After the ordering of partition, and the report of commissioners partitioning the property, the proceedings were objected to as void because the children of the grantor in the trust deed, one of whom intervened and objected, had not been made parties. The objection was overruled and the report confirmed, the court declining to determine the interest of said children under the trust deed and partition. *Held*, on error, that the trustee had at least the title of the life tenant; that the partition was not void for the want of necessary parties, but was valid and binding between the parties to the suit; and that it was not necessary to decide what the rights of the children in the property were, nor the effect of the joint consent of the trustee and life tenant to the partition order, nor the extent, if any, to which they represented and bound other parties.

20. Whether the rule in such case would be different had the property been found incapable of partition, and its sale therefore necessary or an election to take at the appraised value, is not considered.

21. The rejection of the report of partition commissioners is not justified on the sole ground of an omission to state the character and situation of the premises, or that they had been equitably and advantageously partitioned; the statute not expressly requiring the report to so state.

22. The action of commissioners in partition will not be set aside on the ground of unequal allotments, except in extreme cases—as where the partition appears to have been made upon wrong principles, or where it is shown by clear and decided preponderance of the evidence that the partition is grossly unequal.

23. Exceptions to the report of commissioners in partition on the ground of inequality in the allotments not being sustained by a clear preponderance of conflicting evidence, the fact that the dissatisfied party, pending the hearing of the exceptions, has offered to accept a different division, or to pay the other party for his share a sum exceeding the value set by the commissioners upon the part allotted to him, is not sufficient to vacate the partition; since, if the lands are capable of partition, a party is not compelled to sell his interest, whatever the price offered.

24. It is imperative that the proceedings of commissioners in partition should be fairly conducted, with an equal opportunity to all parties to be heard; and a vacation of their report would be proper upon its appearing that secret or undue influence upon their action had been exercised by either party.

25. The mere fact that the general manager for the contesting parties of the extensive property in controversy had accompanied the partition commissioners when they examined the various tracts, held not sufficient to cause a vacation of their report and partition, it not appearing that the manager had been present at any of the several deliberations of the commissioners, no specific act or statement of his being shown as having influenced the allotment, no intentional impropriety or prejudice appearing and the object of the commissioners and the manager as stated by them having been that the latter, as representing all the parties, might point out the property and assist merely in its examination.

26. Where the parties to a suit for partition have consented by their pleadings to a partition of the premises described in the petition, without any suggestion that other tracts are also held in similar co-tenancy, an objection on the ground of the exclusion of such other tracts ordinarily comes too

late after judgment and the report of the commissioners, especially so where there is no inherent objection to a separation of the different tracts.

27. As against an objection first made after the filing of the report of the commissioners, the exclusion of scattering tracts of state lands held under lease and used to command a range for cattle in connection with a large body of ranch and hay lands owned by the parties, *held* not fatal to the partition of the latter, there being no inherent difficulty in making such partition separate from the leasehold premises.

28. Defendant was not prejudiced by the fact that plaintiff's counsel prepared the report of the commissioners, where it was so prepared after the announcement by the commissioners of their conclusions in the presence of counsel for both parties, and their request thereupon that counsel prepare the report, and the report conformed in all respects with the conclusions previously announced, and, though furnished with a copy, defendant's counsel declined to make any suggestions respecting its contents.

ON PETITION FOR REHEARING.

1. It is not necessary in pronouncing judgment upon the issues between the parties to a suit to include therein a determination of its effect upon other designated persons.

[Decided June 10, 1907.]          (90 Pac., 378.)
[Rehearing denied December 7, 1907.]    (92 Pac., 622.)

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

Action for partition. The material facts are stated in the opinion.

*Burke & Clark, Samuel T. Corn* and *Henry W. Magee,* for plaintiffs in error.

The examination by the commissioners of the lands partioned, made by merely driving over the lands when they were covered with snow, was entirely inadequate. (R. S. 1899, Sec. 4086.) The failure of the plaintiffs below to accept one of the offers of defendants is conclusive evidence that they are unwilling to stand upon their opinion as to values, and that an inequitable partition has been made.

When gross inequality of a partition is proven, as in this case, the court should set it aside upon the refusal of an equitable offer made by the dissatisfied party. Such offers are proper and pertinent upon the question of the justness of the ·action of the commissioners. (Moore v. Williamson, 73 Am. Dec., 93; Kiebel v. Leick (Ill.), 73 N. E., 187; Cockrell v. Coleman's Adm., 55 Ala., 583; Richards v. Ruddy, 83 Pac., 606; R. S. 1899, Sec. 4794.) Inequality in the partition is good ground for vacating the report of commissioners. (2 Dan. Ch. Pr., 1130; Riggs v. Dickinson, 2 Scam., 438; Gouch v. Green, 102 Ill., 507; Holland v. Stout, 22 Ind., 488; Miller v. Rouse, 2 O. Dec., 358; ·R. Co. v. Houghton (Mich.), 18 N. W., 788; Klingensmith's Est., 130 Pa. St., 521.)

This is a civil action under the code, and involving as it does the equitable rights of the parties in interest, it is in effect a suit in equity, governed by the equitable rules applicable to the facts of the case, and it is not a purely statutory proceeding, or a special proceeding under the statute. (Corwine v.· Mace, 36 O. St., 125; ₒ Lindsay v. Zanoni, 6 O. C. C., 477; Chin v. Trustees, 32 O. St., 236; McRoberts v. Lockwood, 49 O. St., 374; English et al. v. Monypany, 6 O. C. C., 562; Stone v. Doster, 7 O. C. C., 10; Morgan v. Stayley, 11 O., 389; Perry v. Richardson, 27 O. St., 119; Swihart v. Swihart, 7˙O. C. C., 342; Hogg v. Beerman, 41 O. St., 94; Cory v. Lamb, 43 O. St., 390.)

Where the proceeding is purely statutory it is held that only parties in possession or entitled thereto could demand partition, in accordance with the English authorities. (Tabler v. Wiseman, 2 O. St., 208; Younges v. Heffner, 36 O. St., 237; I Wash. Real Prop., 447-448; Mussey v. Sanborn, 15 Mass., 155; Freeman on Partition, pp. 579 to 584; Wilkinson v. Stuart, 74 Ala., 205; West v. West, 90 Ala., 461; Merritt v. Hughes (W. Va.), 15 S. E., 56.) But since it has become a civil action the entire title may ·be partitioned, provided all parties in interest are made parties. (Lindsay v. Zanoni, *supra;* Hogg v. Beerman,

*supra.*)   The refusal of the court to adjudicate the rights of all parties necessarily involved, and to admit the *cestuis que* trust as parties, was, therefore, in direct violation not only of the general rule, but of the theory of our statutes.

The executors of the Leiter will being in possession, the plaintiffs, as trustees and devisees, were neither tenants in common not entitled to possession.   They were, therefore, not proper parties plaintiff.   (R. S. 1899, Secs. 4081, 4084; Morrison v. Bank (Ill.), 72 N. E., 1112; Smith v. Pratt, 13 O., 551; Serena v. Moore (N. J.), 60 Atl., 953; 21 Ency. L., 1151; Honeywell v. Taylor, 6 Cush., 472; Conter v. Herschel, 24 Nev., 152; Tabler v. Wiseman, 2 O. St., 209; Sevens v. Enders, 13 N. J. L., 271.)   The provisions of the probate code refer only to partition among heirs and do not apply to this action.   It is no answer to this contention that Field, trustee, and Pratt consented by their answers that partition might be made, for the only decree possible under our statute is one putting the petitioner in possession in severalty of lands of which they were in possession, or entitled to possession, in common.   A decree divesting the executors of the possession and conferring it upon the trustees is in violation of law, and consent cannot confer jurisdiction upon the court to do a thing contrary to law.

The daughters of Pratt were parties in interest, and as such necessary parties.   (R. S. 1899, Secs. 3480, 3487, 4083; Fisher v. Hopkins, 4 Wyo., 390; Thames v. Mangun (Miss.), 40 So., 377; 1 Story's Eq., 656; 3 Pom. Eq. Jur., 1387; Pom. R. & R., 373; 15 Ency. Pl. & Pr., 792; 2 Perry on Trusts, 873, 881; Wash. R. Prop., 449 (2d Ed.); Freeman on Part., 579, 580, 583, 593; O'Connor v. Irvine, 74 Cal., 435; Halloway v. McIlhenny Co., 77 Tex., 657; Hurley v. O'Neil (Mont.), 79 Pac., 242; Rivans v. Summers, 33 Fla., 540; Phosphate Co. v. Anderson (Fla.), 37 So., 730; Klingensmith's Est., 130 Pa. St., 521; Bell v. Adams, 81 N. C., 118; Gayle v. Johnston, 80 Ala., 398; Fitts v. Craddock (Ala.), 39 So., 506; Whitlow v. Eckels,

78 Ala., 206; McCorkle v. Ray, 76 Ala., 213; Cotton v.
Cash (Miss.), 37 So., 459; Moore v. Appleby, 36 Hun,
370; Nichols v. Mitchell, 70 Ill., 258; Campbell v. Camp-
bell, 63 Ill., 642; Hickenbothem v. Blackledge, 54 Ill., 316;
Barney v. Baltimore, 6 Wall., 285; Tabler v. Wiseman,
2 O. St., 208; Younges v. Heffner, 36 O. St., 237; Barr v.
Chapman, 7 O. C. C., 396; Webster v. Dennis, 4 O. C. C.,
315; McBain v. McBain, 15 O., 337; Morrow v. Morrow
(Pa.), 25 Atl., 1107.) As holders of a vested future estate
or remainder they were entitled to be made parties. (Camp-
bell v. Stokes (N. Y.), 36 N. E., 811; Miller v. Wright
(N. Y.), 16 N. E., 205; Badgett v. Keeting, 31 Ark., 400.)

Vesting title and vesting possession are two distinct
matters. A remainder is vested (of title) if the event
upon which its passage depends were to happen there
would be a vesting of possession in the remainderman.
But if the vesting of the remainder is uncertain for
want or uncertainty of a remainderman, the remainder
is said to be contingent. That is, it is the uncertainty
of the right were the event ending the life estate
to occur and not an uncertainty because of a possible
revocation of the will or deed, that makes the remainder
contingent, nor is it the uncertainty as to who all may be
the remaindermen or recipients of possession upon the ter-
mination of the life estate, it being sufficient to make a
vested remainder that at the time the instrument is called
in question there exists (*in esse*) a remainderman, for then,
under such condition, the remainder is said to be vested.
(Scott v. Stebbins, 91 N. Y., 605; Salisbury v. Slade (N.
Y.), 54 N. E., 743; *In re* Brown, 154 N. Y., 313; Savage
v. Williams, 15 La. An., 254; Numsen, Trustee, v. Lyon,
87 Md., 31; Estes v. Nell, 108 Mo., 172; Hiles v. Rule,
121 Mo., 248; Croxall v. Shererd, 5 Wall., 268; Doe v.
Considine, 6 Wall., 475; Burley v. Clouge, 52 N. H., 267;
Collins v. Collins, 40 O. St., 361; Railsback v. Lovejoy,
6 N. E., 504; Blanchard v. Blanchard, 1 Allen, 223;
Ducker v. Burnham, 146 Ill., 20; McArthur v. Scott, 113

U. S., 340; Thaw v. Falls, 136 U. S., 546.)   The children of Pratt were "persons interested."   (Campbell v. Purdy, 5 Redf., 434; Ormsby v. Ottman, 85 Fed., 493; Sweatman v. Dean (Miss.), 38 So., 231.)

The objection was timely made as to the defect of parties defendant.   (15 Ency. Pl. & Pr., 688-9; Halloway v. Mc-Illhenny (Tex.), 14 S. W., 240; Hurley v. O'Neil (Mont.), 79 Pac., 242; Toole v. Toole et al. (N. Y.), 19 N. E., 682; O'Connor v. Irvine, 74 Cal., 235.)

The entire lands of the partnership, including those held by lease, should have been included in and partitioned in this proceeding.   (17 Ency. L., 752; 21 id. (2d Ed.), 1162; Hurley v. O'Neil, 79 Pac., 244; Sutter v. San Francisco, 36 Cal., 116; Miller v. Miller, 13 Pick., 239; Grubb v. Grubb, 74 Pa. St., 25; 1 Wash. R. Prop., 582; Freeman on Part., 508; Wilkinson v. Stuart, 74 Ala., 205; West v. West, 90 Ala., 458; Hanson v. Willard, 12 Me., 145; Duncan v. Sylvester, 16 Me., 388; Bigton v. Littlefield, 52 Me., 26.)   The fact that Mr. Irvine accompanied the commission at the time they viewed the land, and that the report of the commission was prepared by counsel for defendants in error, no one representing the exceptors being present, invalidates the proceeding.   (Gage v. Gage (N. H.), 14 Atl., 869; Mc-Laughlin v. Judge (Mich.), 23 N. W., 472; Paul v. Detroit, 32 Mich., 117; Goch v. Green, 102 Ill., 507; Simpson v. Simpson (Mich.), 26 N. W., 287; Walmsley v. Mill Creek (W. Va.), 49 S. E., 141.)

A report of a commission in partition should be sufficiently in detail and so set forth the facts upon which the commission have acted, as to show to the court that the law, both in letter and spirit, has been complied with, that the court may know that the partition is equal, equitable and just as between the parties in quantity and value, for it is only such a partition that the court ought to or can legally confirm, and this knowledge should come to the court officially, as the official knowledge and action of its commission, and not by and through partisan affidavits in subse-

quent proceedings, prepared by skillful and prejudiced counsel. (R. S. 1899, Secs. 4086, 4087; 15 Ency. Pl. & Pr., 817; Skinner v. Carter (N. C.), 12 S. E., 908; Brown v. Sceggell, 22 N. H., 551; Hathaway v. Unknown Persons, 32 Me., 136; Tucker v. Tucker, 19 Wend., 226; Brokaw v. MacDougall, 20 Fla., 233; Cecil v. Dorsey, 1 Md. Ch., 227; 2 Dan'l. Ch. Pl. & Pr., 1133; Stallings v. Stallings, 22 Md., 41; McGee v. Russell, 49 Ark., 109; Hardin v. Cogswell, 5 Heisk., 549; Shearer v. Shearer, 125 Ia., 394; Story's Eq., Sec. 655.) The report in this case fails to set forth the necessary facts and should be set aside on that ground.

The refusal of the court to make any findings as to the interest of the daughters of Pratt, who held the remainder estate, was erroneous. It is the well known office of a court of equity to remove clouds from titles, but the lower court, instead of performing that function, has cast a cloud over the entire title to the property. It was not only necessary to determine these matters in order to make proper order of partition, but it should have been made known to and carefully considered by the commission, that they might adopt a proper theory of partition and make a just and equitable division, for a very different theory of appraisement might be necessary in making partition of a simple life estate, which in this case could not hope to exceed fifteen years, from what would be applied in a partition of the fee.

*Henry W. Magee, Burke & Clark* and *Samuel T. Corn,* for Hattie B. Pratt Magee, the intervening petitioner, filed a separate brief.

By reason of the interest granted to them by the trust deed in all of the property owned by said Pratt and said Leiter, deceased, in partnership, Hattie B. Pratt Magee and Margaret Pratt Olsson were necessary and indispensable parties to the proceedings or action for partition instituted by the defendants in error, under both the rules of common law, and the statute law and constitution of Wyoming and the constitution of the United States. (R. S. 1899, Secs.

4083, 3480, 3487; Fisher v. Hopkins, 4 Wyo., 379; Bailey v. Holmes, 3 L. R. Ch. Div., 690; Allen v. Tritch, 5 Colo., 222; Robinson v. Fair, 128 U. S., 53; Doe v. Willard, 18 How., 297; Miller's Eq. Pro., 42; Smith v. Gains, 39 N. J. Eq., 545; Thompson v. Holden, 117 Mo., 125; Halloway v. Halloway, 97 Mo., 633; Hiles v. Rule, 121 Mo., 256; Lily v. Menke, 126 Mo., 190.) The statute does not allow temporary partition for and during a life estate. The phrase of the statute, "may be made a defendant," cannot be treated as directory or as giving discretion, when to do so persons will in consequence be divested of property and constitutional rights. (20 Ency. L. (2d Ed.), 239; State v. Sweetser, 53 Mo., 440; Fowler v. Perkins, 77 Ill., 271; Hogan v. Devlin, 2 Daly, 184; Webb v. Robbins, 77 Ala., 180; Terr. v. Nelson, 2 Wyo., 346; Black's L. Dict., 762; Mason v. Fearson, 9 How., 422; Clendenning v. Guise, 8 Wyo., 91; Schenck v. Ry. Co., 5 Wyo., 430; Inv. Co. v. Carpenter, 9 Wyo., 110; State ex rel. v. Board, 7 Wyo., 478.)

By the terms of the trust deed the intervening petitioner and her sister each became seized of an estate of a vested remainder. A remainder to definite, ascertained persons in being dependent only upon a life estate which is to terminate at the death of the life tenant is unequivocally a vested remainder. It has no element of contingency whatever, neither as to (1) the happening of the determining event, or (2) the persons who are to take at the determination of the life interest, and having these requisites of certainty the interest created is unfailingly a vested remainder in the two daughters, and a further contingent remainder in their children living at their death. (Coleman's Fearne on Rem., 6; Bunting v. Speck, 41 Kan., 424; Doe v. Considine, 6 Wall., 474; Kemp v. Bradford, 61 Md., 330; McArthur v. Scott, 113 U. S., 430; Weston v. Weston, 125 Mass., 268; Moore v. Lyons, 25 Wend., 119; Com. v. Hackett, 102 Pa. St., 505; Gourley v. Woodbury, 42 Vt.; 2 Hammond's Bl., 293; Chapin v. Nott, 203 Ill.,

341; Smith v. West, 103 Ill., 332; 4 Kent's Com., 202;
8 Words and Phrases, 7305; Johnson v. Edmond, 65 Conn.,
492; Smith v. McWhorter (Ga.), 51 S. E., 471.) Having
such vested remainder, they cannot be represented by the
trustee or any other person. The trust was executory dur-
ing the grantor's life, with no power as to the estates of the
remaindermen. (Numsen v. Lyon, 87 Md., 31; Fleming
v. Hughes, 99 Ga., 444; Moore v. Appleby, 36 Hun, 368
(108 N. Y., 237); Campbell v. Stokes, 142 N. Y., 23;
Mead v. Mitchell, 17 N. Y., 210; Freeman Part., 483;
Calvert's Parties in Eq., 55, 58, 59; 101 Am. St., 864-877;
Freeman on Judg., 162, 870, 874; Bell v. Adams, 81 N. C.,
118; Williamson v. Jones, 43 W. Va., 562; Bliss Code Pl.,
109b; Pool v. Morris, 29 Ga., 378; 23 Ency. L. (2d Ed.),
102; Ingersoll v. Jewett, 16 Blatch., 378; Carroll v. Gold-
schmidt, 83 Fed., 508.) The grantor can, by his presence
in this action, no more represent the remaindermen therein,
than if he had granted the life estate to a third person
instead of having reserved it to himself.

*Gibson Clark* and *John W. Lacey,* for defendants in error.

A commissioner in partition may rely not only on his
own examination of the property, but also upon information
derived from the other commissioners. (Yates v. Gridley,
16 S. C., 496; Robb v. Robb, 62 S. W., 125; Knapp, 63
Ill., 492.)

It must be assumed that the commissioners visited the
lands for the purpose of looking them over in good faith to
such extent as in their judgment would enable them to
properly discharge their duty in the matter entrusted to
them. They each say under oath that their examination
was such as with their former personal knowledge enabled
them to do this, and they did form an opinion from such
examination and former personal knowledge as to the value
of the several tracts and ranches which is supported by
the great weight of the testimony. Although it was known
to the plaintiffs in error and their counsel fully ten days or

two weeks before the commissioners made their award, that Mr. Irvine accompanied the commissioners while visiting the lands, not the slightest intimation of any objection to their proceeding or conduct in permitting this was made or suggested until after the award was made and published. The complaint comes too late. (Wynn v. Ry. Co., 91 Ga., 344; Watson v. Roode, 43 Neb., 348; Peterson v. Skjelver, 43 Neb., 348; Berry v. DeWitt, 27 Fed., 723; Bradshaw v. Degenhart, 39 Pac., 90; Lee v. McLeod, 15 Nev., 158; Patten v. M. Co., 11 R. I., 188; 3 Cyc., 749 (Note, 58); Fox v. Hegelton, 10 Pick., 275.)

The report was not improperly prepared by counsel. It correctly sets out the award as announced by the commissioners, and was prepared at the latter's request. It is a matter of every-day practice for courts to orally announce their decisions and to direct counsel to prepare in proper form the formal decree, and it is prepared generally by counsel on one side and submitted to counsel upon the other side for his suggestions and to ascertain whether or not he objects.

The necessary contents of the report of commissioners is to be determined by the nature of the action, since the statute does not detail what facts shall be set out. The court's only power as to the report is to confirm or reject it. The partition is not made by the court. (15 Ency. Pl. & Pr., p. 818; Freeman on Co-ten. and Par. (2d Ed.), 526; Lucas v. Petres, 45 Ind., 313-318; Murphy v. Murphy, 1 Mo., 741; George v. Murphy, 1 Mo., 777.) It is not necessary, nor is there any reason therefor, to state in the report that the award is equitable, etc. The presumption until the contrary appears is that the commissioners acted according to the statute. (Stannard v. Sperry, 16 Atl., 261.) If it is deemed to be unfair the complaining party is permitted to be heard on that question. The report conforms to the usual practice in such cases. (2 Nash. Pl. & Pr., 1354; 2 Yaple Code Pr., 839, 840; 2 Abb. Prob. L., 1208; Bentley v. Long Dock Co., 14 N. J. Eq., 480; McClanahan v. Hock-

man, 31 S. E., 516; 2 Dan'l. Ch. Pl. & Pr., 1159; 13 Ency. Forms.)

It is not essential to partition that the entire estate held in common must be included. However, after having knowingly consented to a partition of part, it is too late after report of commissioners to object on the ground of the exclusion of the other part. The commissioners could only act as to the lands described. (Corwithe v. Griffing, 21 Barb., 9; Sandiford v. Hempstead, 90 N. Y. Supp., 76.) Upon the death of Leiter, the partner of Pratt and afterwards of Field, trustee, the leasehold interests held by them as partners fell to the executors of Leiter, the surviving partner not giving bond to dispose of the business, as permitted by statute; and hence the plaintiffs below were not tenants in common with the trustee as to the leased lands, and their inclusion in the suit would have been improper. (22 Ency. L. (2d Ed.), 220; Murdock v. Ratcliff, 7 O., 119; Becker v. Walworh, 45 O. St., 169; 18 Cyc., 186; 7 Ency. L., 260; 11 Ency. L. (2d Ed.), 838.) The leased lands do not come under the head of appurtenances to the lands owned and partitioned. (Root v. Wadhams, 107 N. Y., 384; Lintchicum v. Ray, 9 Wall., 241; Humphreys v. McKissoch, 140 U. S., 304; 2 Ency. L. (2d Ed.), 520; Hanson v. Willard, 12 Me., 142.)

The evidence being conflicting, and it not clearly appearing that the award is unjust or unequal, the report of the commissioners will not be set aside on that ground. Vacation because of inequality will not be granted except in extreme cases, as where the partition is based on wrong principles, or, as shown by a clear preponderance of the evidence, is grossly unequal. (Freeman on Part., 525; Thompson's Est., 3 N. J. Eq., 637; Stannard v. Sperry, 16 Atl., 261; Claude v. Handy, 83 Md., 225; 15 Ency. Pl. & Pr., 818; 5 Ency. Ev., 248; 17 Ency. L., 777; McMullin v. Doughty, 62 N. J. Eq., 252; Lang v. Constance, 46 S. W., 693; Kane v. Parker, 4 Wis., 123; Greer v. Ex. of Winds, 4 Des. Eq., 85; Wilhelm v. Wilhelm, 4 Md. Ch.,

330; Bentley v. Long Dock Co., 14 N. J. Eq., 480; Hancock v. Craddock, 2 B. Mon., 389; Crouch v. Smith, 1 Md. Ch., 401; Jewitt v. Scott, 19 Tex., 567; Ransom v. High, 17 S. E., 413; Cross v. Cross, 49 S. E., 129; John & Cherry Streets, 19 Wend., 659; Morrill v. Morrill, 5 N. H., 329; Livingston v. Clarkson, 4 Edw. Ch., 597.)

The intervening petitioner can assign as error only the refusal of the court to admit her as a party. She is not a party, and therefore cannot complain of any ruling on the trial. The defendants below having joined with her in the petition in error, and she with them, no questions are presented. (Milling Co. v. Price, 4 Wyo., 293; Hogan v. Peterson, 8 Wyo., 549; Gordon v. Little (Neb.), 59 N. W., 783; Ry. Co. v. Hubbard (Ala.), 38 So., 750; Wells v. Parker (Ark.), 88 S. W., 602; Custis v. Osborne (Neb.), 89 N. W., 420; Poska v. Stearns (Neb.), 84 N. W., 80; Moseman v. State (Neb.), 81 N. W., 853; McIntyre v. R. Co. (Neb.), 77 N. W., 57; Anderson v. Hall (Neb.), 94 N. W., 981; Storm v. Holmes (Neb.), 96 N. W., 73; Johnson v. Winslow (Ind.), 53 N. E., 388; King v. Easton (Ind.), 35 N. E., 181; Earhart v. Creamery (Ind.), 47 N. E., 226; Board v. Fraser (Ind.), 49 N. E., 42; Leary v. Richcreek (Ind.), 59 N. E., 35; Sibert v. Copeland (Ind.), 44 N. E., 305; Estep v. Burke, 19 Ind., 87; Rudolph v. Brewer (Ala.), 11 So., 314; Hillens v. Brinsfield (Ala.), 21 So., 208; Markham v. Washburn, 18 N. Y. Supp., 355; Miller v. Adamson (Minn.), 47 N. W., 452; Brachtendorf v. Kehn, 72 Ill. App., 228.)

The action in partition is undoubtedly a civil action, but it may not be material to determine whether it is equitable or legal in character. But on the pleadings alleging a legal title, this is clearly an action on the law side of the court. There is nothing in any of the offers of Mr. Pratt or the failure to accept them that has any weight upon the matters in issue.

The possession of the executors of the Leiter estate is only for the purposes of administration, and their posses-

sion is that of the trustees and devisees for the purpose of bringing suit for partition. (R. S. 1899, Sec. 4693.) This section of the probate code plainly applies. There was no defect of parties plaintiff therefore. Nor was there a defect of parties defendant. If Mr. Field and Mr. Pratt own a life estate and no more, the plaintiffs are entitled to partition of the property until the end of the life estate. Whether they might be entitled to other things is not material. They are entitled to this. In that case the life tenants would have no interest in the remainder nor in the possession after the life estate had ceased, and the remainder had become an estate in possession. Neither would the remaindermen have any interest in the possession during the life tenancy. The statute seems to permit partition in favor of or against estates in possession only. (Sec. 4081.) The controversy here then, if only between the owner in fee and life tenant, is such that the remaindermen would be unnecessary parties; and Section 3480 as to parties generally would not apply. Section 4083, in speaking of "other interested persons as defendants," has reference here to the persons interested in the possession during the life tenancy. The objection as to parties, however, was not timely made. (Secs. 3535, 3537, R. S. 1899.)

The children of Pratt do not take a vested remainder under the trust deed. In determining in any case whether a remainder be vested or contingent, the purpose is to ascertain the intention of the instrument, whether a will or deed. The contingencies provided for in the deed in controversy, and the powers conferred upon the trustee, make it evident that no estate has vested in the remaindermen. The lands might never go to the children—they might be sold by the trustee—either or both the daughters might die before the grantor who reserved a life interest. (4 Kent's Com., 203; Tounshend v. Frommer (N. Y.), 26 N. E., 805; Cornwell v. Orton (Mo.), 27 S. W., 536.)

The trustee is empowered to sell and convey in fee, and hence he must be held to have an estate in fee. (Robinson

v. Pierce (Ala.), 24 So., 984; Blount v. Walker (S. C.), 9 S. E., 804; Lawrence v. Lawrence (Ill.), 54 N. E., 918; Devries v. Hiss (Md.), 20 Atl., 131; Neilson v. Lagow, 53 U. S., 98; Reeves v. Brayton (S. C.), 15 S. E., 658.) Mrs. Magee and her sister do not have any legal estate in any of the lands in controversy. The entire legal fee was vested in the trustee. There cannot be, therefore, remaining any legal fee in Mrs. Magee because the whole fee takes up all the parts, and the entire fee in Field renders any legal estate elsewhere impossible. This of itself renders it unnecessary that Mrs. Magee should be made a party. The trustee owning the entire fee represented every one interested in the property held by him in trust. The intention of the grantor must be ascertained. (Thorn v. Thorn (Md.), 81 Atl., 193.) The following indications are found in the deed pointing out the intention. (1) The fee is conveyed to the trustee with absolute power of sale, of reinvestment, of conversion and of partition. (2) The grantor not only reserved for himself a life estate, but the right with the acquiescence of the trustee to use the estate to the extent of using up the principal. This is of itself held in many cases sufficient indication of the intention that the remainder shall be contingent. (3) The grantor contemplates not only an entire change of the character of the property so that it may all become invested in even capital stocks of corporations or in any other personalty, but also that the property may be consumed. This has been held sufficient to indicate an intention that the remainder should not vest until the death of the life tenant. (4) The grantor makes use of the word "vest" in relation to the remainder itself, providing that the remainder shall "go to and vest in" the remaindermen at a particular time, not the date of the execution of the instrument, but the death of the life tenant. Such of the estate as is left "then," that is to say, at the death of the life tenant, is to vest. So far as we have been able to note, there is not a single case in the books which has so many elements indicating that the remainder should not vest until

the death of the life tenant. (Cushman v. Coleman, 92 Ga., 772; Spear v. Fogg (Me.), 32 Atl., 791; Benson v. Edwards (Tenn.), 61 S. W., 1034; Jackson v. Everett (Tenn.), 58 S. W., 340; Bailey v. Happin, 12 R. I., 560; Olney v. Hull, 21 Pick., 311; Howbert v. Cawthorne (Va.), 42 S. E., 683; Graves R. Prop., 190-194; 20 Ency. L., 841; 2 Wash. R. Prop. (3d Ed.), 507-510; Pant v. Walker, 31 S. C., 13; Green v. Grant, 143 Ill., 61; Bamforth v. Bamforth, 123 Mass., 280; Strans v. Rost (Md.), 10 Atl., 74; White's Trustee v. White (Ky.), 7 S. W., 26; Ewing v. Shannahan (Mo.), 20 S. W., 1065; Bennett v. Garlock, 79 N. Y., 302; Hayes v. Tabor, 41 N. H., 521; Hill v. Bank, 45 N. H., 270; Emerson v. Hughes (Mo.), 19 S. W., 979; Baxter. v. Bowyer, 19 O. St., 490.)

An early doubt crept in without foundation as to the power of the trustee to represent the *cestui que* trust in partition. That doubt is set at rest, and indeed shown never to have had any foundation, in the case of Frith v. Osborne, L. R., 3 Ch. Div., 618, where it is held that there was never really any doubt, excepting such as arose out of causeless dicta, and that upon principle and reason a trustee vested with power to sell was likewise clothed with sufficient power to make partition, and this without joining with him the *cestui que* trust. The same matter has come before a number of American courts, and has always been decided the same way, especially since statutes like our Section 3469. (Swift v. Lumber Co., 71 Wis., 476; Goodrich v. Milwaukee, 24 Wis., 422; Gallie v. Eagle, 65 Barb., 583; Phelps v. Townsley, 10 Allen, 554; Kerrison v. Stewart, 93 U. S., 155; Meeks v. Olpherts, 100 U. S., 564; Bennett v. Garlock, 79 N. Y., 302; Ewing v. Shannahan, 113 Mo., 188; Railsback v. Lovejoy (Ill.), 6 N. E., 504; Phelps v. Harris, 101 U. S., 370; Freeman on Co-Tenancy, Sec. 417; Smith v. Gaines, 38 N. J. Eq., 65.)

As to the request for findings upon certain stated things: First: Motions made during the progress of a cause, and the rulings of the court granting or denying them, must, in

order to be reviewed on appeal, be taken up on a bill of exceptions. (3 Ency. Pl. & Pr., 392; Perkins v. McDowel, 3 Wyo., 328.) Courts do not take judicial notice of their records and proceedings in other causes. (Demars v. Hickey, 13 Wyo., 371.) The court was asked to find matters of evidence. A finding should not be of the evidence, but upon an ultimate fact. (Sheldon v. Dutcher, 35 Mich., 10; Davis v. Franklin, 25 Ind., 407; Tousey v. Lockwood, 30 Ind., 153; Kealing v. Vansickle, 74 Ind., 529; Locke v. Bank, 66 Ind., 353; ·Smith v. Mohn, 87 Cal., 489; Schneider v. Ashworth (Minn.), 26 N. W., 233.) The plaintiffs in error have no ground of complaint because of the refusal of the court to consider and determine the rights of Mrs. Magee, who was not a party to the suit.

POTTER, CHIEF JUSTICE.

This is an action for partition, and is in this court on error. It was brought in the district court in Laramie County by Mary T. Leiter, Joseph Leiter, and others, trustees and devisees under the last will and testament of Levi Z. Leiter, deceased. The defendants were Marshall Field, trustee; James H. Pratt, and Mary T. Leiter and Joseph Leiter, executors of the last will and testament of Levi Z. Leiter, deceased.

The amended petition upon which the cause was heard alleges in substance that on June 15, 1903, and for many years prior thereto Levi Z. Leiter and James H. Pratt were tenants in common, seized and possessed of the title in fee simple of the lands, tenements and hereditaments therein described; that the said Leiter on that date and at the time of his death owned an undivided twenty-nine hundred and fourteen four-thousandths part of said lands, tenements and hereditaments, and that the said Pratt owned an undivided ten hundred and eighty-six four-thousandths part thereof; that on the date above mentioned the said Pratt conveyed by deed to the defendant Marshall Field all his said undivided part in trust, to pay the income of said property to

the said Pratt during his life time, and after his death to vest the title thereto in the children of the said Pratt, and thereby authorized the said Field to do all acts necessary to make partition or division of said property or any part thereof with the said Levi Z. Leiter; that said Field accepted said conveyance and thenceforth continued to act as trustee thereunder; that after the execution and delivery of said trust conveyance up to the time of the decease of the said Levi Z. Leiter, the latter and said Field, trustee, held and possessed said real estate as tenants in common, in the proportions above mentioned; that said Levi Z. Leiter died June 9, 1904, seized in fee simple of his said interest, and leaving personal property largely in excess of the amount required to pay all of his indebtedness, including a large amount of personal property situate in this state, and leaving no creditors in this state; that by his last will and testament which had been duly admitted to probate in said district court, Mary T. Leiter and Joseph Leiter were named and appointed as executors thereof, and that all of his said real estate was bequeathed and devised to the plaintiffs, as trustees, with full power and authority to sell and convey all or any part thereof; that letters testamentary had been duly issued to the executors so named in the will, and as such executors they are entitled to and are in actual possession of all the real estate described in the petition. It is then alleged that the said executors are made parties defendant in order that their possession and their right to the income and profits of said real estate during their period of executorship may properly be protected by the decree, and that their title and possession of such part of said real estate as may be set off to the plaintiffs, or such portions of the proceeds of the sale of any part of the said real estate which may be sold by the order of the court, may be substituted for their possession of the undivided portion of the real estate held by them as tenants in common with the other defendants. It is further alleged that as such trustees and devisees the plaintiffs have a legal right to the said undivided twenty-nine hun-

dred and fourteen four-thousandths part of the said real estate, and that in said premises they are tenants in common with the defendant Marshall Field, trustee, who as such trustee has a legal right to the said undivided ten hundred and eighty-six four-thousandths part thereof. The lands, embracing more than twenty thousand acres, are alleged to be situated in the Counties of Laramie, Johnson and Sheridan in this state, and are severally described in the petition, together with certain water rights and ditches connected therewith. The prayer of the petition is that the real estate described may be partitioned between the plaintiffs and the defendants under the direction of the court according to their respective rights and interest therein; that the interest of plaintiffs be set off to them; that commissioners be appointed by the court for the purpose of making such partition, or, in case a partition of said premises cannot be made without manifest injury to the value thereof, that then the said premises be sold by and under direction of the court, free of the rights of all the parties to the suit, and that the proceeds of any such sale be distributed to the parties entitled thereto in lieu of their respective parts and proportion in the premises according to their just rights therein; and that plaintiffs have such other and further relief as may be just and equitable.

The defendants, Marshall Field, trustee, and James H. Pratt, filed their separate answer to said petition, the material portion thereof being as follows:

"They admit that the rights and interests of the several parties, plaintiffs and defendants, named in the said amended petition, in and to the several pieces or parcels of land mentioned and described in said amended petition, are truly set forth and stated in said amended petition; and these defendants submit to such decree as this court may make in the premises, either for a partition of the said several pieces or parcels of land, or for a sale thereof, or of such parts thereof as shall be found incapable of partition without material injury to the parties interested therein,

and these defendants pray that they may have such other and further relief as may be just and equitable."

The defendants, Mary T. Leiter and Joseph Leiter, as executors, filed their separate answer admitting that the rights and interests of the several parties, plaintiffs and defendants, named in the petition are truly set forth and stated therein, and praying that their rights in the premises as admitted in the petition may be preserved in any decree that may be entered.

Upon the issues thus framed an order of partition was entered by the court which recited that the cause came on to be heard upon the petition, the answer of the defendants Field and Pratt, and the answer of the defendants Mary T. and Joseph Leiter, as executors ,and that it appeared to the satisfaction of the court that each and all of said defendants had been duly notified of the bringing, pendency and demand of said action as required by law, and in their answers had consented to the partition of the premises described in the petition as therein prayed for, and that plaintiffs had a legal right and estate in said premises; and it was ordered, all parties consenting thereto, "That by the oaths of R. S. Van Tassell, Oliver Henry Wallopp and E. W. Whitcomb, judicious disinterested householders of the vicinity, upon actual view of the premises, partition be made of said lands, together with the water rights appurtenant thereto, in the following proportions, to-wit: The twenty-nine hundred and fourteen four-thousandths part thereof to the said plaintiffs, as the trustees and devisees under the last will and testament of Levi Z. Leiter, deceased, and the ten hundred and eighty-six four-thousandths part thereof to the said Marshall Field, as trustee for the said James H. Pratt, if the same can be done without manifest injury to the value thereof, and if not, that said premises be appraised at the true value thereof in money." (Then follows a detailed description of the various lands and water rights.) It was further ordered that a writ of partition issue to the sheriff of the County of Laramie commanding

him to have said partition made accordingly.  A writ of partition was thereupon issued, and was subsequently returned by the sheriff as duly executed, accompanied by the report of the commissioners.  The contest in the court below arose upon exceptions to that report, filed by the defendants Field and Pratt, and an intervening petition also objecting to the report filed by Hattie B. Pratt Magee, a daughter of the defendant Pratt, who asked to be made a party defendant and that all the proceedings following the filing of the petition be vacated.

The lands described in the petition and thus involved in the action compose three separate bodies or groups.  About fifteen thousand acres are located in Sheridan and Johnson Counties and are generally referred to in the proceedings as the Powder River ranch or Clear Creek lands, and, for convenience, will be here designated by the latter term.  The remaining lands are situated in Laramie County;  one group of about twenty-five hundred acres being referred to as the Rawhide ranch or lands, and the other, comprising about twenty-seven hundred acres, as the P F ranch or Platte River lands, with an additional tract of two hundred and eighty acres about four miles distant therefrom.  The P F ranch or Platte River lands, with the water rights for their irrigation, and the said two hundred and eighty-acre tract were set off and assigned by the commissioners to Marshall Field, as trustee of James H. Pratt.  All the other lands and water rights were by the commissioners set off and assigned to the plaintiffs.  The several tracts and water rights so set off and assigned to the respective parties are described in detail in the report.

Omitting the description of the lands, the report of the commissioners is as follows:

"We, the undersigned, the commissioners named in the writ of partition issued in this cause, and to which this report is annexed, after being each duly sworn, and after being attended by the respective parties hereto, through their counsel, and having considered such information as

was presented to us by said parties and their counsel, and after actually viewing and personally examining the premises in said writ described, and after fully informing ourselves as to the proportionate values of the said several parcels of land described in said writ and in said order, on our oaths do set off and assign to Mary T. Leiter, Joseph Leiter, Nancy Lathrop Carver Leiter, Marguerite Hyde Leiter and Seymour Morris, trustees and devisees under the last will and testament of Levi Z. Leiter, deceased, as such trustees and devisees, as their share of said premises, the following described lands and water rights situate, lying and being in the Counties of Laramie, Johnson and Sheridan, in the State of Wyoming, to-wit:" (Then follows a description of the lands and water rights so assigned to plaintiffs.) "And we do also, on our oaths, set off and assign to Marshall Field, as trustee of James H. Pratt, as his share of said premises, so as aforesaid described in said writ, the following described lands and water rights situate, lying and being in the County of Laramie, in the State of Wyoming, to-wit:" (Then follows a description of the lands so assigned to the defendant Field as trustee.) The report is signed by each of the commissioners.

The defendants Field, as trustee, and Pratt filed objections and exceptions to the report. Some of the objections were to the form of the report, viz.: 'That the report fails to show or purport that the estate was set apart in such lots as would be most advantageous and equitable, having due regard to the improvements, situation and equality of the different parts thereof; that it fails to set out the facts upon which the conclusions of the commissioners were based; and that the report furnishes no facts to inform the court so that it may set apart the estate in an advantageous and equitable manner. The other objections go to the substance of the report and question the equality and fairness of the partition as made by the commissioners. In the latter respect it was charged that the partition does not set

apart the estate in such lots as would be most advantageous and equitable, having due regard to the improvements, situation and equality of the different parts thereof, as required by statute; that it does not set apart said estate either in quantity or quality in proportion to the several interests of the owners, but is grossly unequal and inequitable between the parties interested; that the portion set out to the complaining defendants is of a value less than one-eighth of the real or total value of said estate purported to be partitioned, much less than should have been set out to them; that neither of the objecting defendants were notified of the time when the commissioners intended to view and examine the estate, nor invited to be present upon such examination, either in person or by representatives, but that the commission was accompanied by William C. Irvine, acting in the interests of the other parties to the action, and that said Irvine made suggestions and directed the movements of said commission in their view and examination of the properties, he being thoroughly familiar with the said estate, which had a large influence upon the commission; that when the examination was made the inclement and stormy weather and the fact that the ground was covered with snow made it impossible for the commission to fully and fairly view the premises, and form an accurate opinion as to the relative values of the several pieces of land involved in the partition; that the lands involved were not of equal value, and those of least value of all the lands were those set aside by said commission to said objecting defendants; that the lands assigned to the defendants are of such a character that their successful irrigation is impossible, and their productiveness less than one-fourth per acre than that of the Rawhide lands assigned to plaintiffs; that scattered throughout the surrounding townships adjacent to the Clear Creek group is a large body of leased lands held by the estate consisting of about sixteen thousand acres, which should have been taken into consideration in connection with said estate and should have

been partitioned as a part thereof, whereas they were left
to be settled or disposed of as a separate estate, and that
such lands are of value only to the parties obtaining the
Clear Creek lands, for the reason that the last mentioned
lands or ranches, together with the leased lands, constitute
a single ranch proposition for the breeding and raising of
cattle; that the value which the objecting defendants un-
derstood the commissioners had placed upon the various
tracts of land in making their award was much less than
the real value of the lands assigned to plaintiffs and much
more than the real value of the lands assigned to the com-
plaining defendants; and that the objecting defendants
prior to the making of the report of the commissioners of-
fered to accept as a just and equitable division of the estate
a portion of the Clear Creek lands at a valuation consid-
erably in excess of the valuation placed upon such lands by
the commission, which offer, however, was not accepted by
said commission.

The plaintiffs filed their reply to the objections denying
specifically the various charges of unfairness and inequality
in the partition as made by the commissioners, and the
charges as to the influence of said Irvine, and the impos-
sibility of there having been a full view of the premises and
an accurate estimate of the character and value of the re-
spective groups and tracts of lands.

Thereafter, and before the hearing upon the exceptions,
an intervening petition was filed by Hattie B. Pratt Magee,
a resident of the State of Illinois, in which she objected and
excepted to the report of the commissioners upon the
ground of its unfairness and inequality, and also to all the
proceedings had subsequent to the filing of the petition upon
the ground that, as one of the children of James H. Pratt,
she is an interested person in all of the said lands and
property under and by virtue of the trust deed executed
by the said Pratt to the said Field as trustee. It was
alleged that said petitioner and another daughter of said
Pratt, viz., Margaret Pratt Ollson, were *cestui que* trusts

in said trust deed, being then and still the only surviving children of said Pratt; that they ought to have been named as defendants in said action and permitted to answer said petition, in the manner provided by law for non-resident defendants, or otherwise; that they were not made defendants nor served with notice of said action by publication or otherwise; that said petitioner had not consented to said proceedings or any part thereof, directly or indirectly, nor authorized the said Pratt or the said Field, or both of them, to consent thereto on her behalf; that the estate of Levi Z. Leiter had not been settled and distributed in accordance with his last will and testament, and that one year not having elapsed since the appointment of the executors, the estate was not in a position for distribution, and said petitioner believed that no partition of said property could then be made for that reason; that the other daughter of said Pratt, a resident of the Kingdom of Sweden, was also without due notice of the filing of the petition and of the proceedings in partition, and that her rights in the premises had been wholly excluded in the partition. The intervening petition prayed that the petitioner be made a defendant, that her objections be sustained, and that all the proceedings since the filing of the petition be set aside, vacated and annulled; that due notice be given to the children of said Pratt of the filing of said petition, and that said petitioner be permitted within a reasonable time to be fixed by the court to make answer to the petition filed in the action and to assert her rights therein.

It appears that upon the filing of the sheriff's return to the writ of partition with the report of the commissioners the plaintiffs and the defendant executors asked its confirmation, and the defendants Field and Pratt thereupon filed their above mentioned exceptions. Afterward, on the day of the hearing upon the motion for confirmation and the objections thereto, the complaining defendants filed a motion for leave to amend their exceptions so as to embrace an objection to any further proceedings until the

said daughters of the defendant Pratt are made parties and properly brought before the court, and given an opportunity to plead, or take such other action as may be deemed proper, and that all proceedings subsequent to the filing of the amended petition be vacated and annulled until said parties are properly before the court and under its jurisdiction. In the meantime, by permission of the court, the objecting defendants and the plaintiffs had filed affidavits in support of the exceptions and in opposition thereto respectively; and the hearing as to the controverted facts was had upon such affidavits, and possibly others filed at the time of the hearing, with the exception that Commissioners Whitcomb and Van Tassell were orally examined, the former having been called for that purpose by the defendants, and the latter by the court.

All the matters that had thus come into controversy, including the intervening petition of Mrs. Magee, appear to have been heard at the same time and they were disposed of by the same order. The court denied the petition and exceptions of the intervening petitioner and the motion of the objecting defendants for the bringing in of additional parties, the order reciting as a finding by the court in that connection that "it is not necessary at this time to make additional parties defendant in said cause as prayed for in the petition of the said Hattie B. Pratt Magee and the motion of the said defendants, nor is it necessary at this time to decide what, if any, rights the said Hattie B. Magee or any other person not made a party to the original petition in this cause may have in or to the lands described in the said petition, or any of them, under the trust deed heretofore executed by the said defendant James H. Pratt; nor the effect of the joint consent of Marshall Field, trustee, and James H. Pratt to the decree of partition and the appointment of commissioners to make partition, nor the extent to which Marshall Field, trustee, and James H. Pratt represent and bind other parties." Upon the issues joined upon the exceptions to the report of the commissioners the

court found generally for the plaintiffs, and overruled each and all of the exceptions to the report. The proceedings of the sheriff upon the writ and the report and proceedings of the commissioners were thereupon approved and confirmed and it was ordered that the said parties hold in severalty the shares set off and assigned to each respectively, as shown by said report. Exceptions were duly reserved to the several rulings and the order of confirmation; a motion for new trial was made and overruled, and that ruling excepted to, and Marshall Field, trustee, James H. Pratt and Hattie B. Pratt Magee filed their joint petition in error for a reversal of the order aforesaid.

Immediately preceding the hearing and submission of the cause in this court counsel for plaintiffs in error suggested in writing the death of Marshall Field since the institution of the proceeding in error and moved the substitution in his place as one of the plaintiffs in error of Jerome Pratt Magee, who had become successor in trust by virtue of the trust deed and had accepted and qualified as such succeeding trustee. At the same time a motion of plaintiffs in error was also presented for leave to amend the petition in error in certain respects to the end that it may show that the plaintiffs in error severally as well as jointly and severally assign the errors complained of. The motions were not consented to by defendants in error, but were taken under advisement to be disposed of upon a final consideration of the cause. The motion to amend will be passed for the present.

We do not understand the fact to be disputed that the petition in error was filed and the summons in error issued during the lifetime of Mr. Field. As required by the statute, the errors complained of were set out in the petition in error, and no further assignment of error was necessary under our practice. This court thereupon obtained jurisdiction of the cause, and it is clear that Mr. Field's death did not operate to abate the proceeding. (2 Ency. Pl. & Pr., 198, 199; 2 Cyc., 770.) That it did so operate is not

contended, but it was suggested that substitution is unnecessary and that the order made in the cause might be entered as of some date previous to the death of said party. Such a practice exists in some jurisdictions where the death of a party occurs after the submission of the cause, and the order of affirmance or reversal will be entered as of the date of submission or some subsequent date during the lifetime of the deceased party; and we are not inclined to here question the correctness of that practice in the absence of a statute preventing it. But we think the propriety of our entry of an order finally disposing of this cause as of a date prior to its submission might well be doubted. We have not gone fully into the question whether the interest of the deceased trustee is represented by the other plaintiffs in error; nor was that question argued, but we think it at least doubtful By analogy to the practice in the district courts under the code the successor in trust would seem to be a proper party. (Rev. Stat. 1899, Secs. 3622-3638.) We are of the opinion that the substitution should be allowed. This is purely an appellate proceeding and the substituted party will succeed herein only to those rights possessed by his predecessor, and to the same extent, for the same purposes, and with the same liabilities under the order appealed from. The substitution is granted upon that understanding.

The trust deed in controversy executed by James H. Pratt to Marshall Field contains a preamble reciting in substance that said Pratt and Levi Z. Leiter are joint owners of certain tracts of land in the State of Wyoming and of certain leasehold estates in other lands in said state, and also of live stock and other personal property situated upon or used in connection with said lands, the interest of Pratt therein being ten hundred and eighty-six four-thousandths; and further reciting that: "The said Pratt is desirous of creating an interest in the said property in his children, subject to his right to receive the income derived therefrom during his life, and to that end to vest his interest in the said real and personal property in a trustee for the uses and purposes,

and upon the terms and conditions and with the powers hereinafter stated."

The deed thereupon proceeds to convey by apt words of conveyance unto said Field "all his (the grantor's) right, title, interest and estate in and to all the property, real and personal, situated and being in the State of Wyoming, which is owned in common by the said James H. Pratt and Levi Z. Leiter, * * * intending thereby to convey by this instrument to the said Marshall Field all the interest of every kind and nature which the said James H. Pratt now has in and to any property situated in the State of Wyoming, in which the said Levi Z. Leiter is also interested as part owner, whether the said property is owned by the said Pratt and Leiter as tenants in common, joint tenants, or as partners, together with all increase and additions to the said property so owned by the said Pratt and the said Leiter; the said property so conveyed, assigned and transferred by this instrument in trust, as trustee, for the uses and purposes, and with the powers hereinafter stated as follows, to-wit:

"The trustee shall have full power and authority to do all acts, and to execute all instruments in his judgment necessary or proper for the proper management, care and disposition of the said property, including the right to make partition or division of any of the said property with the said Levi Z. Leiter; to authorize or join in the sale, transfer or conveyance of any of the said property, real or personal, upon such terms and at such prices as the said trustee shall deem best; and also to join in or authorize the purchase of any new or additional personal property of any kind or description in the judgment of the said trustee necessary or proper to produce the best results and income from the said property so conveyed to the said trustee; to make improvements, to insure, to pay taxes, and to do any and all acts for the protection or to render safe and productive the property and estate hereby transferred to said trustee; and to invest and reinvest any proceeds of the property coming

into the hands of the said trustee under his trust, in either real or personal property, of any kind or description, including real estate, stocks of corporations, bonds, or loans upon real estate, it being expressly understood and agreed the said trustee shall not be liable for any loss in any way arising or occurring through any mistake in judgment or failure to act on his part, but only for wilful default.

"The written request of the said James H. Pratt to the said trustee shall be a sufficient warrant and authority for the said trustee to do any act in relation to the said trust estate, or to make, execute and deliver any instrument of any kind or nature touching or affecting the said property, or any part thereof, or to make any investment of any part of the trust fund at any time in the hands of the said trustee under this instrument. The net income derived from said trust estate shall be paid over from time to time to the said James H. Pratt, or in accordance with his written directions; and the decision of said trustee as to what is income and what is principal of said trust estate shall be conclusive upon all parties interested.

"Upon the death of said James H. Pratt the trust hereby created shall terminate and be at an end, and the trust estate then in the hands of the said trustee shall go to and vest in the children of the said James H. Pratt in equal shares, the issue of any deceased child to stand in the place of and take the share which such deceased child would have been entitled to receive if living.

"In the event of the death of the said Marshall Field during the continuance of the trust hereby created, Jerome Pratt Magee, the grandson of the said James H. Pratt, shall be successor in trust to the said Marshall Field, and shall succeed to all the trusts, estates, powers and duties by this instrument vested in the said Marshall Field, as trustee."

A good part of the argument in the briefs and on oral presentation of the case was addressed to the question of the interest secured to the daughters of Mr. Pratt by the trust deed, and the necessity of having them made parties

as a jurisdictional condition to a partition of the lands involved in the controversy.   A discussion of the question thus presented may be facilitated by stating briefly the various contentions of counsel.   On the one hand it is contended that Mr. Pratt's children took a vested remainder, and have a present vested interest in the lands not represented by either Pratt or Field, or both of them combined, and that without a consideration of their interest upon bringing them in as parties there can be no valid partition. It is argued in that connection that partition under the code is a civil action of an equitable nature to which the rules affecting partition in equity should be applied; and that as to parties not only · equitable principles must be held to govern, but that the interest of the children of Mr. Pratt is such as to bring them within the general code provision which permits any person to be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of a question involved therein. (Rev. Stat. 1899, Sec. 3480.)

On the other hand, counsel for defendants in error maintain that the interest of the children under the trust deed is that of a contingent remainder, without any present or vested interest, and further that whether they take a vested or contingent remainder their interest was fully represented in the action by the trustee, who, as trustee of an express and active trust holding the fee of the Pratt interest, was the sole necessary party as to that interest.   They also contend that the powers conferred upon the trustee are sufficiently broad to authorize him to make or consent to a partition of the premises binding upon the interest of all parties under the deed; but if not that under the statute, the children of Pratt were neither necessary nor proper parties because not tenants in common with the plaintiffs below, and that the partition was at least proper as against the life estate.

(2)

From the recital contained in the order appealed from quoted above in this opinion, it is evident that the district court entertained the view that in the absence of other parties the partition was at least effective and binding as against Pratt and his life tenancy and as against Field, trustee, to the extent that his representative title and interest might be bound without bringing into the case any other parties; and that it was therefore unnecessary upon a consideration of the report of the commissioners to determine whether that representative interest extended beyond the life estate, or the effect of the partition upon other interests whatever their character.

That view and the refusal of the court below to pass upon the interest of the intervening petitioner and her sister under the trust deed and the partition is criticised by counsel for plaintiffs in error, and they refer to it as a holding that, even though such petitioner may have rights to the property sought to be partitioned, it is not necessary that she should be heard in this case which disposes of her property. But we are inclined to doubt the justness of counsel's interpretation of the court's position. The very question that was not decided because deemed unnecessary was whether or not the partition proceedings disposed of the property of the intervening petitioner.

We shall first direct our attention to the question whether, under the rules governing compulsory partition as affected or controlled by our statute and upon the proceedings in this case up to and including the action and report of the commissioners, the plaintiffs were in the absence of the suggested additional parties entitled to partition in any respect or to any extent as against Field, trustee, and Pratt. At common law prior to the enactment of statutes upon the subject partition could be compelled only at the suit of a co-parcener either against a co-parcener or one who had succeeded to the interest of a co-parcener. The proceeding at law was by writ of partition. By Statutes 31 and 32, Henry VIII., the remedy was extended to joint tenants and tenants in common whether of estates of

inheritance or for life or years. And Mr. Freeman, in his valuable work on Co-tenancy and Partition, asserts with what seems to be good reason, though apparently contrary to an assumption of Judge Story in his work on Equity Jurisprudence, that until after the statutes above referred to courts of equity did not undertake to assume jurisdiction in partition in behalf of joint tenants or tenants in common. (Freeman on Co-tenancy and Partition (2d Ed.), 423.) It appears unquestionable, however, that at a very early period jurisdiction was entertained in equity to enforce partition even before the statutes aforesaid at the suit at least of a party entitled thereto at law, though it seems that where the title was involved in some legal objection the parties were usually required to submit the same for settlement to a common law court. But where in the case of a complication of titles the law court was unable to furnish a plain, complete and adequate remedy, the aid of a court of equity might be invoked because of its power to "promote discovery or to remove obstructions to the right, or to grant some other equitable redress." (1 Story's Eq. Juris., Secs. 650, 651.) The remedy in equity was concurrent only, and is said to have been founded upon several grounds which are summarized by Judge Story in concluding his discussion of the subject as follows: "The necessity of a discovery of titles, the inadequacy of the remedy at law, the difficulty of making the appropriate and indispensable compensatory adjustments, the peculiar remedial processes of courts of equity and their ability to clear away all intermediate obstructions against complete justice." But the learned jurist further remarked that such courts in making partition follow the analogies of the law, and will decree it in such cases as the courts of law recognize as fit for their interference; though equity jurisdiction in partition is not limited to cases cognizable or relievable at law, for under some circumstances where the action could not be maintained at law equity might afford relief, as in the case of an equitable title which cannot be considered in a law court, but which equity regards as true and

perfect.  (Id., Sec. 658.)   And Mr. Freeman states that
equity generally refused to extend its authority over any
species of property which could not be partitioned at law.
(Freeman on Cotenancy and Part., 440.)    While equity
would grant partition in cases incapable of relief at law
because of legal objections operating as obstructions to the
action of the law court, but which might be overcome
through the remedial processes of a court of equity, it is
not to be understood that it would furnish the remedy to
estates not entitled to partition at law, unless perhaps par-
tition should be found necessary as an incident to complete
equitable relief in cases otherwise properly before the court.

In this country the remedy of partition has generally
been regulated more or less by statute, and the jurisdiction
under statute has been in some states vested in courts of
law, and in others in courts of equity, and in still others
the remedy may be pursued in either a court of law or
equity; and, generally, the statutory creation or regulation
of the remedy has not been considered as excluding equity
jurisdiction over partition in proper cases.

It was essential to compulsory partition at common law
that the property be held in co-tenancy, and none but estates
in possession were bound by the judgment; it did not affect
estates in remainder or contingency, and a party without
possession or right to possession could not invoke the rem-
edy, for the purpose of the action was to sever an undivided
possession, and thus remove the difficulties attending a joint
occupancy.   As persons holding an estate in lands not en-
titling them to possession were not injured by the mere
fact of the undivided possession legally held by others,
they could not require a severance of such possession.   And
as the remedy acted upon the possession, a partition of
estates held in remainder only without a present right of
possession of any part was not enforceable;   nor could
partition be compelled between a tenant in possession and
mere remaindermen.   (Freeman on Co-tenancy and Part.,
439, 440;  Nichols v. Nichols, 28 Vt., 228 (67 Am. Dec.,

699) ; Hadley v. Cross, 34 Vt., 586 (80 Am. Dec., 699) ; Tabler v. Wiseman, 2 O. St., 207; Metcalfe v. Miller, 96 Mich., 459.) And in the absence of a statute authorizing it partition cannot be awarded in equity any more than at law of an estate in reversion or remainder. (Freeman on Co-tenancy and Part., 440; I Wash. Real Prop. (3d Ed.), 584; Wilkinson v. Stuart, 74 Ala., 198; Desshong v. Desshong, 186 Pa. St., 227.)

Partition might be had, however, between tenants for life or years, and also between the owner of the fee of an undivided part and the tenant for life of the other part; and in such cases it was not necessary to join the reversioner or remainderman, though the partition in the absence of the latter as a party would be of temporary duration only. Mr. Freeman says: "While the rule seems to be invariable that courts will not proceed to a partition in the absence of any of the co-tenants, yet it must be remembered that this rule is confined to co-tenants of the estate of which partition is sought. Hence a partition may be ordered of an estate for years, or for life, or of a mere equity, although the tenants of the reversion or of the legal title are not before the court." The author was there discussing the proceeding in equity. (Freeman on Co-tenancy and Part., 463.) Judge Story on this subject remarks: "Nor does it constitute any objection in equity that the partition does not or may not finally conclude the interests of all persons; as where partition is asked only by or against a tenant for life, or where there are contingent interests to vest in persons not *in esse*. For the court will still proceed to make partition between the parties before the court, who possess competent present interests, such as a tenant for life, or for years. But, under such circumstances, the partition is binding upon those parties only who are before the court, and those whom they virtually represent; and the interests of third persons are not affected." (I Story's Eq. Jur., 656.)

In Carneal v. Lynch, 91 Va., 114, the right was upheld of a tenant for life in one undivided moiety of property to

maintain partition against the fee simple owners of the
other moiety and the owners of the estate in remainder of
the moiety held by the life tenant; the statute of that state
applicable to the proceeding before the court having pro-
vided fully for the sale of all contingent interests, and the
bill was framed in a double aspect, having been brought for
partition and a sale of the contingent estates.   The statute
in relation to partition provided that "tenants in common,
joint tenants and co-parceners shall be compellable to make
partition," etc.   In a learned discussion of the subject the
court said that if the life tenant of the one moiety is in law
a tenant in common with the owners in fee of the other
moiety, it would seem clear that he can maintain the suit
to compel partition against such co-tenants; and it was
held that the parties were plainly co-tenants.   The court
further said:  "We do not perceive the force of the objec-
tion that a life tenant of a part cannot maintain a suit
against his co-tenants who own the fee of the other part,
for partition.   There can be no doubt that the fee simple
owners could maintain the suit for partition against the life
tenant, as defendant, and the manner in which the parties
to the suit are arranged can make no difference."

Mr. Freeman, at Section 455 of his work above cited,
adds:  "A tenant for life or for years could, both at law
and in equity, compel a partition.   He could not compel
the reversioner to join with him; nor could he occasion a
compulsory partition which would be binding after the
termination of his estate.  *  *  *  Partition may be had on
the application of a tenant for years, although the tenant
of the other moiety holds in fee."  (Citing Hobson v. Sher-
wood, 4 Beav., 184.)   In Indiana it was said:  "The right
of the owner of a life interest in an undivided part of real
estate, to have partition, has been recognized, and, we
think, should be deemed to be established."   (Shaw v.
Beers, 84 Ind., 528.)   The following cases, in addition to
others that might be cited, also support the proposition that
partition may be had between the life tenant of an undivided

part and the owner in fee of the other part, at the suit of either: Arnold v. Bunnell, 42 W. Va., 473; Metcalfe v. Miller, 96 Mich., 459 (35 Am. St., 617); Biddle v. Biddle, 117 Mich., 28; Eisner v. Curiel, 2 App. Div. (N. Y.), 522; s. c., 20 Misc., 245; Jameson v. Hayward, 106 Cal., 682 (46 Am. St., 268); Johnson v. Brown (Kan.), 86 Pac., 503; Toledo Loan Co. v. Larkin, 25 O. Cir. Ct., 209. In the New York case of Eisner v. Curiel, the action was between life tenants of an undivided interest, and was treated as one for the partition of the life estates only, and for that purpose other parties were held to be unnecessary.

The statutory provisions of this state relating to partition are found in the civil code. The material provisions are as follows:

"Tenants in common, and co-parceners, of any estate of lands, tenements or hereditaments within the state, may be compelled to make or suffer partition thereof in the manner hereinafter prescribed." (Rev. Stat. 1899, Sec. 4081.)

"A person entitled to partition of an estate may file his petition therefor in the district court, setting forth the nature of his title, and a pertinent description of the lands, tenements or hereditaments of which partition is demanded, and naming each tenant in common, co-parcener or other interested person, as defendants therein." (Id., Sec. 4083.)

"If the court find that the plaintiff has a legal right to any part of such estate, it shall order partition thereof in favor of the plaintiff, or all parties in interest; appoint three disinterested and judicious householders of the vicinity to be commissioners to make the partition, and order a writ of partition to issue." (Id., Sec. 4084.)

"Before a writ of partition is issued, the person of whom partition is demanded may appear in court, in person or by attorney, and consent to a partition of the estate, agreeably to the prayer and facts set forth in the petition, which amicable partition, when made and recorded, shall be valid and binding between the parties thereto." (Id., Sec. 4088.)

Section 4085 requires the writ to be directed to the sheriff of either of the counties in which any part of the estate lies,

and to command him that, by the oaths of the commission-
ers, he cause to be set off to the plaintiff or each party
in interest, such part and proportion of the estate as the
court shall order.

Provision is made for a just valuation of the estate by
the commissioners if they shall find it incapable of division
without manifest injury to the value thereof, and for either
party to elect to take the estate at such valuation, and if
no such election shall be made, then for a sale of the
property.

Manifestly the statute does not, like the statutes of some
states, enlarge upon the common law with respect to the
persons who may require or may be compelled to make or
suffer partition. The distinguishing characteristic of ten-
ancy in common is unity of possession or right of posses-
sion; there may also exist unity of interest and title, but
that is not required. (Freeman on Cotenancy and Part.,
86, 87.) There must be an equal right to the possession of
every part and parcel of the subject matter of the tenancy.
(Id.) It cannot be doubted that a legal title to an un-
divided part accompanied by possession or right of pos-
session, whether the title be in fee or for life, gives the
owner a right to maintain partition against the owner of
the remaining part holding the same as a tenant in common
with him. The provision of Section 4084 that if the court
find that the plaintiff has a legal right to any part of the
estate partition shall be ordered clouds the construction of
the statute somewhat; but we are not inclined to view it as
preventing one with an equitable right capable of conversion
in equity into a present legal title with right of possession
from obtaining full relief in one action, including partition.

The partition statute forms a part of the civil code which
declares that there shall be but one form of action to be called
a civil action, and abolishes the distinctions between actions
at law and suits in equity, and the forms of all such actions
and suits previously existing. (Rev. Stat. 1899, Sec. 3443.)
An action to compel partition is therefore, we think, a civil

action, and it is so held in Ohio, from which state our code was taken. (Perry v. Richardson, 27 O. St., 110; Mc-Roberts v. Lockwood, 49 O. St., 374.) But it does not necessarily follow that it is purely equitable in character. It may be or it may not, depending upon the nature of the titles asserted and the relief sought. The distinction between actions at law and suits in equity are abolished by the code, but not the distinction between legal and equitable rights or legal and equitable relief. As Mr. Phillips says: "These provisions have neither abolished nor affected legal or equitable rights and reliefs; the object has been to avoid circuity of action and multiplicity of suits, and to simplify, facilitate, and cheapen procedure. Legal and equitable rights and defenses remain as before; the modes of asserting them are changed." (Phillips Code Pl., 163.)

At the common law partition was both a legal and an equitable remedy, that is to say, it might be afforded by either a court of law or equity. In cases without complication of any sort the jurisdiction was concurrent; depending upon varying circumstances, one court could grant the relief where the other could not. There is no substantial reason, we think, for designating the action under the code as exclusively either a legal or equitable proceeding. A particular action may be one or the other or a combination of both; or, to speak more accurately, perhaps, it may because of the facts alleged or the relief sought invoke what was formerly essentially equitable jurisdiction, or a jurisdiction that might have been exercised by either a court of law or equity. The statute retains the writ of partition of the law courts and does not provide for an exchange of conveyances, one of the chief advantages of the former proceeding in equity. We perceive no necessity, however, for distinguishing it as belonging to either class of proceedings. To call it a civil action is enough. The question of parties, like most other questions, must be settled with regard to the issues in the case and the relief demanded.

Concerning the sufficiency of the parties before the court in the case at bar, it should be remembered that the ques-

tion was not raised until after the order adjudging that partition be had and the return of the writ with the report of the commissioners. The prayer of the intervening petition was that the order previously made and all proceedings that succeeded the filing of the amended petition be vacated and annulled, which was also the practical effect of the supplemental objections of the complaining defendants. By the objections thus interposed the validity of the judgment and proceedings in respect to jurisdiction was assailed, so that the question was not merely whether to a complete settlement of the rights of all parties interested directly or remotely in the property, the presence of all such parties was necessary; nor whether they would have been *proper* parties. The question was whether the judgment and proceedings were void.

The code provides generally that any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of a question involved therein; and that the court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights, but that when a determination of the controversy cannot be had without the presence of other parties, the court may order them to be brought in or dismiss the action without prejudice. (Rev. Stat., Secs. 3480, 3487.) The first provision (Sec. 3480) seems to carry out the equitable theory as to parties, but it does not make every one referred to a necessary party to the rendition of a valid judgment. The well known distinction between necessary and proper parties is not abolished. Upon that provision the law writers generally agree that those persons who have or claim an interest in the controversy adverse to the plaintiff are *necessary* parties, while those who, in contradistinction to the former are merely "necessary parties to a complete determination of a question involved," are, as a rule, *proper* but not *necessary* parties. (Pomeroy's Code

Rem. (3d Ed.), Sec. 333; Phillips Code Pl., Sec. 453.)
A familiar illustration is found in the action to foreclose a
mortgage; the mortgagor, his heir, devisee, grantee or as-
signee, are necessary parties, while other mortgagees or
lien holders are proper parties. The action may proceed to
judgment without the latter, but it will not be binding upon
their interests.

The chancery rule as to parties was well stated by Mr.
Justice Bradley in Williams v. Bankhead, 19 Wall., 563.
"First, where a person will be directly affected by a decree,
he is an indispensable party, unless the parties are too
numerous to be brought before the court, when the case is
subject to a special rule; secondly, where a person is in-
terested in the controversy, but will not be directly affected
by a decree made in his absence, he is not an indispensable
party, but he should be made a party if possible, and the
court will not proceed without him if he can be reached;
thirdly, where he is not interested in the controversy be-
tween the immediate litigants, but has an interest in the
subject-matter which may be conveniently settled in the
suit, and thereby prevent further litigation, he may be a
party or not, at the option of the complainant."

The rights of the parties in an action for partition are
determined by the order which finds them to be tenants in
common, ascertains and adjudges the respective shares, and
orders a partition thereof, whether the order be deemed
interlocutory or final. (McRoberts v. Lockwood, 49 O. St.,
374; Freeman, Sec. 522.) A defect of parties plaintiff or
defendant is a ground of demurrer if the defect appears
upon the face of the petition, otherwise the objection may
be taken by answer, and if the objection is not raised by
either demurrer or answer it is deemed to be waived, unless
it goes to the jurisdiction of the court. (Rev. Stat. 1899,
Secs. 3535, 3536, 3537.) We suppose that in partition upon
its appearing that there is such a defect of parties as to
render the court without jurisdiction, appropriate orders
with regard thereto may be made in the absence of an

objection raised by demurrer or answer. On the other hand, where the defect is not jurisdictional, the waiver would seem to be complete so far as the parties to the action are concerned without an objection properly raised.

As determined by the petition in the case at bar, as well as the judgment and the award, the action is one for partition between the parties to the suit. Those parties only and others, if any, virtually represented by them would be bound. We need not here determine whether under our statutes in an action between the actual tenants in common in possession the owners of reversionary interests without right of possession might be made parties; the question is, are they necessary parties? Construing a somewhat similar statute, it was held in the Michigan case of Metcalfe v. Miller, *supra,* that the owner of an undivided part of the life estate, and also of an undivided part of the reversion, might have partition of the life estate as between himself and the other tenant thereof, but could not demand partition against the other reversioners.

In fact, as well as by the admission of the pleadings, the trustee, Field, was a tenant in common with the plaintiffs, whether he is to be regarded as holding the fee of the former Pratt interest or merely the title of the life tenant. He had at least the latter. The plaintiffs, therefore, were entitled to a partition as against him, unless there is substantial merit in the contention that they were themselves without right because of the possession of the executors of the Leiter will. We think that contention is without merit, for the reason that the executors offered no objection, but practically consented, and their possession was only that of executors during and for the purpose of administration, and not adverse, and it does not appear that the administration would be in any wise prejudiced by the partition. (Phillips v. Dorris, 56 Neb., 293; Richardson v. Loupe, 80 Cal., 490.) The statute expressly provides that for the purpose of bringing suit for partition the possession of an executor or administrator is the possession of the heirs or

devisees. (Rev. Stat. 1899, Sec. 4693; I Abb. Prob. Law, Sec. 430.) The intervening petitioner and her sister were neither in possession nor entitled to possession, and were not, unless. represented by the trustee, tenants in common with the plaintiffs, and did not, therefore, have or claim an interest in the controversy adverse to the plaintiffs, within the meaning of Section 3480. Assuming that their reversionary interest was such as could only be represented by them in person, and as distinct and separate from the title held by the trustee, and that it might have been brought into the case, they would come within the provision of the statute permitting one to be made a party who is necessary to a complete determination of the questions involved, or within the third class mentioned by Mr. Justice Bradley, viz.: those not interested in the controversy between the immediate litigants, but having interests in the subject-matter capable of convenient settlement in the suit, and who may be made parties or not at the option of the complainant. This would give them the position of proper but not necessary parties.

We conclude on this branch of the case, therefore, that the order adjudging that partition be had and the proceedings thereunder were not void for the want of necessary parties, but that it was valid and binding between the parties to the suit. Indeed the statute so declares where the defendants have come in and consented to partition. If, as contended, the interest of the children of Mr. Pratt was not virtually represented by the trustee, or if by the terms of the trust deed the latter's appearance and consent could not and did not bind that interest, then of course those parties were not concluded by the proceedings. As they were not personally made parties, and were not necessary parties, we know of no practice or reason making it imperative even if proper, which we doubt, for the court in their absence to decide in this action what the rights of the intervening petitioner and others besides the actual parties in and to the property were, nor the effect of the joint

consent of the trustee and life tenant to the decree for partition, nor the extent to which they represented and bound other parties. Whether the situation would be different had the commissioners reported the property to be incapable of partition, and proceedings had been taken for a sale thereof, or an election to take at the appraised value had been made, need not be and has not been considered, nor do we intend to intimate any opinion upon that question.

In arriving at our conclusion, we have not been unmindful of the provisions of the partition statute requiring each tenant in common, co-parcener or other interested person, to be named as defendants. The term "other interested person" may be no doubt more or less broadly construed upon a consideration of a cause prior to judgment ordering partition depending upon the facts alleged and the remedy demanded, though we think it unnecessary to decide and we do not decide whether it is intended to embrace persons not tenants in common or co-parceners with the plaintiff in an action strictly in partition. We are of the opinion, however, that it does not prevent a partition between parties in possession as tenants in common where either or both hold less than a fee simple title, at least if the property is capable of partition. In such a case the interested persons may, it seems clear, be only the tenants in possession. Here a judgment was entered effective to the extent of adjudging partition between the tenants in possession. Whether it goes beyond that or not in consequence of the title held by the trustee and the powers conferred upon him, the district court declined to consider, and we observe no substantial reason for disturbing its action in that respect, or for this court to consider the questions involved in that inquiry.

The remaining questions relate to the report and proceedings of the commissioners and the equality of the partition. The statute is silent respecting the contents of the report and would seem to be satisfied by a report showing generally the action and determination of the commis-

sioners. We do not think that its rejection would be justified upon the sole ground of an omission in the report of the facts concerning the character and situation of the premises, nor its failure to specifically state that the partition had been equitable and advantageously made, since those matters are not expressly required to be set forth. It does not occur to us that such statements would add materially to the report. The court does not make the partition, it only acts to approve or disapprove where partition is reported. The question is not so much whether the commissioners affirm the equality and fairness of the partition as whether it is in fact equitable. The whole matter may be brought before the court as it was in this case upon exceptions to the action of the commissioners, and the court does not need a recital in the report of the facts regarding the lands involved to enable it to pass upon the question of confirmation. The statutory requirement that the estate shall be set apart in such lots as will be most advantageous and equitable, having due regard to the improvements, situation and equality of the different parts thereof is the natural rule, and one that will be intuitively recognized by intelligent persons, such as the commissioners here unquestionably were. We think the report indicates a thorough understanding by the commissioners of their duty, and we can observe no prejudice to any party resulting from the omission to set forth in the report the things suggested.

The record discloses three recognized classes of lands connected with the Clear Creek property, exclusive of the lands held under leases. First, 3,407 acres of irrigated or irrigable lands; second, 1,700 acres contiguous to the irrigable lands, but without a water right; third, approximately 10,000 acres of dry lands, referred to as scrip lands, but which serve to command a range for live stock and furnish access to watering places. It appears from the affidavits of the commissioners considered upon the hearing of the objections that in determining the proportionate values of all the lands involved in the partition and making a division

thereof, they valued the first class of Clear Creek lands at
$22 per acre, the second class at $8.50 per acre, and the
third class at $5 per acre; the Platte River lands at $30
per acre, the 280-acre tract in connection therewith at $5
per acre; and the Rawhide lands at $35 per acre. At these
values the lands set apart to the objecting defendants would
be worth about $85,000, and those set apart to the plaintiffs
about $230,000, amounts approximately equaling the pro-
portionate shares of the respective parties.

A large number of affidavits of persons asserting a famil-
iarity with the lands and their values were filed by the
plaintiffs and defendants respectively. There appears to be
very little difference in the estimate placed upon the value
of the Rawhide lands; the estimates as to them varying
generally from thirty-five to forty dollars an acre. There
appears also to be a substantial agreement among the wit-
nesses as to the values of the second and third classes of
the Clear Creek lands; the average as to the second class
being perhaps seven dollars, though some place the value
as low as four dollars, a few at ten dollars, one or two as
high as twenty, and a number at seven to eight dollars.
The third class of those lands are quite generally agreed to
be worth from four to five dollars per acre, a few only of
the affidavits stating a higher value than five dollars.

There is, however, a wide disagreement between the
parties and upon the evidence impossible to harmonize in
relation to the value respectively of the Platte River lands
and those embraced in the first class of the Clear Creek
group; and the controversy as to values is substantially
confined to those lands. According to the evidence on be-
half of the complaining defendants below, the value of the
first class or irrigable Clear Creek lands is from thirty to
fifty dollars an acre, and of the Platte River lands from
ten to twelve dollars an acre, though some of the affidavits
filed by defendants place the value of the last mentioned
lands as low per acre as seven or eight dollars, and others
as high as thirteen or fifteen dollars; and in a majority of

the affidavits furnished by defendants concerning the Clear Creek first class lands their value is estimated at not less than thirty-five dollars per acre, while in others it is stated as high as forty and fifty dollars. The estimates furnished by the affidavits presented by the plaintiffs, on the other hand, run from thirty to fifty dollars an acre for the Platte River lands, and from twenty to twenty-five dollars an acre for the irrigable Clear Creek lands; but in most of such affidavits the latter are valued not to exceed twenty-two dollars an acre, and the former usually at thirty dollars. Moreover, there is a conflict in the evidence regarding the character of the lands, the extent to which they can be irrigated and rendered productive, as well as the nature of the surface and soil.

From the separate affidavits of the commissioners it appears that they were agreed upon the character, quality and values of the several groups and classes of land, and they each thereby testify to the reasonableness of the respective values, as estimated by them for the purpose of determining upon a proper division of the property. According to such affidavits, which in this particular are not controverted, the commissioners appear to have been men of large experience, long personal acquaintance with most of the lands, and possessing a general knowledge of the character, usefulness and value of lands located as these lands are. One of them shows a continuous acquaintance with the Platte River and Rawhide lands since 1858, and with the Clear Creek lands for fifteen years. It is reasonable to suppose in a matter of this kind and magnitude that the commissioners were selected because of their experience and knowledge, as well as their reputation for fairness.

The conflict upon the evidence concerning the values in controversy is so pronounced that there would seem very small ground for assurance that the vacation of the proceedings and another reference to the same or different commissioners would result in harmonizing in any material degree the contrary opinions of those competent to speak

upon the subject. The fact is well known that the honest views of equally fair and capable persons will often differ more or less widely regarding the value of real estate.

The well settled rule is that the action of commissioners in partition will not be set aside on the ground of unequal allotments except in extreme cases—as where the partition appears to have been made upon wrong principles, or where it is shown by very clear and decided preponderance of evidence that the partition is grossly unequal. The report of commissioners in this class of cases is regarded at least as conclusive as a verdict of a jury upon a trial at law, and will not be disturbed except upon grounds similar to those on which a verdict may be vacated and a new trial granted. Indeed, the rule is maintained by some courts that it is to be regarded with more favor than a verdict, for the reason that the commissioners are usually selected by the parties because of their superior judgment and capacity to perform this particular service, and are authorized to exercise their personal knowledge and to act upon a view of the property. (Freeman, Sec. 525.) In New Jersey it was said: "Where a partition has been actually made by commissioners, the court, by its well settled practice, interferes with their action with great reluctance. It is only where a clear mistake has been made that their proceedings will be interfered with." (Bentley v. Long Dock Co., 14 N. J. Eq., 480.)

It is strenuously urged, however, that the commissioners valued the Platte River lands upon the erroneous assumption that they are susceptible of irrigation, and there is evidence in support of the view that as a rule they are not capable of successful irrigation. There is evidence also to the contrary; and we not only find the evidence as to that matter as conflicting as upon the general subject of value, but we think it impossible to say that the alleged fact of the mistake in the character of the lands has been established by a clear preponderance of the evidence. Persons possessing an apparently equal acquaintance with the lands

and capacity of judging, state different conclusions upon the probable productiveness of the lands under irrigated cultivation. A water right sufficient to irrigate them seems to have been secured and maintained. In addition to their value for cultivation, the commissioners and others regard them as peculiarly valuable as a ranch for raising live stock, owing to the surrounding range, which, it is stated by some of the evidence, is not the case with the Rawhide lands. We have examined the entire evidence in relation to this particular matter with much care, and we are not convinced that the objection upon the ground of an unequal allotment is sustained, unless the evidence on behalf of the plaintiffs be disregarded, and there is no ground for such a course. It is true that the defendants presented certain written propositions offering to accept a different division—one of them offering to pay the plaintiffs $232,-085.11 for their undivided interest in all the lands. It may be that, as suggested, propositions of that kind may operate to shake the reasonableness of the partition, when the other party prefers to rest upon the allotment of the commissioners. The propositions in this case clearly enough show that the proposer is dissatisfied with the share given him, and that he honestly believes the property given to his adversary to be of a greater value than that placed upon it by the commissioners; but upon the circumstances here they cannot take the place of the partition, nor be held sufficient to vacate it. In effect that would amount to a substitution of the judgment of one of the parties for that of the commissioners, and allow him to determine the method of the partition. We are not inclined to the opinion that where, as in the case at bar, the sworn statements of the party in relation to the values of the land are corroborated by the testimony of many other reputable and competent witnesses, his refusal to accept a proposition apparently based upon a higher valuation of the lands set apart to him and a lower valuation of those set apart to the dissatisfied party should be held sufficient to discredit the

truthfulness or honesty of his statements. The lands being capable of partition, the law does not compel the moving party to sell his interest, whatever the price offered. For reasons satisfactory to himself he may wish to retain his interest, though offered an opportunity to dispose of it at a valuation equal to or exceeding that placed upon it by the commissioners, or by himself. Although counsel for defendants in error have suggested some apparently pertinent objections to the various offers, they seem to have been made in good faith, and to indicate a deep seated conviction on the part of Mr. Pratt that his interest in the property has been unjustly discriminated against in the allotment. Whether that conviction is well founded can only be determined by the court upon all the evidence.

The fairness of the proceedings is challenged on the further ground that Mr. W. C. Irvine accompanied the commissioners on the occasion of their inspection of the lands. He was and had been for some time the general manager of these properties, and he went with the commissioners and assisted in conducting them upon the lands and pointed the same out to them, and may have answered questions relative to them. It appears that he was present at the first meeting of the commissioners, which was also attended by the representatives of the respective parties, and by Mr. Pratt, and the commissioners and the representatives of the plaintiffs each swear that they understood at that meeting, and supposed it to be understood by all parties, that the commissioners would be accompanied by Mr. Irvine, and certain occurrences are related tending to show a general understanding to that effect. Mr. Pratt and his counsel, however, unequivocally state in their affidavits that they had no such understanding or knowledge. Mr. Irvine states that he did not go as the representative of either of the parties, but merely to assist the commissioners in examining the property, and that he did not in fact influence or attempt to influence them in their action or determination; and that is corroborated by each of the commissioners. No

statement made to them by Mr. Irvine nor any act of his
is pointed out as having influenced the allotment, other
than the mere fact of his presence when the property was
examined.   It does appear that, after the commissioners
had reported, and the objections had been filed, he assisted
counsel for plaintiffs, at the latter's urgent request, in
securing some of the affidavits filed in opposition to the
objections, and Mr. Irvine, in his affidavit, values the prop-
erty substantially the same as the commissioners.  There
is no showing, however, that he made his opinion as to the
respective values known before the report was made.   After
the commissioners returned from viewing the property, they
held several meetings discussing the matter among them-
selves; but Mr. Irvine does not seem to have been present
at any of their deliberations.   And though it was doubtless
known to the defendants upon the return of the commis-
sioners that Mr. Irvine had gone with them, no objection
thereto was made until after the report had been filed.
Before the filing of the report a meeting was held by the
commissioners attended by representatives of both parties,
and an opportunity was then offered for any additional
suggestions from either side;  and it appears that some
suggestions were made; and finally, ten days after their
return from the property, the commissioners verbally an-
nounced to the parties at a meeting held for that purpose
their conclusions subsequently embodied in the report.

It is imperative, of course, that the proceedings should be
fairly conducted with an equal opportunity to all parties to
be heard;  and the fact that secret or undue influence had
been exercised by either party upon the action of the com-
missioners would doubtless require the vacation of their
report.   The presence of the manager seems to have been
in perfect good faith both on his part and on the part of
the commissioners, and they each positively deny any undue
influence growing out of that circumstance, or that it had
any influence upon the decision of the commissioners.   It
seems to have been the idea of the latter, as well as Mr.

Irvine, that his presence was for the purpose of pointing out the property, and assisting the commissioners in going over the premises, as representing all the parties. We are satisfied that the proceeding was free from any intentional impropriety, and we do not perceive upon the evidence any prejudice to the defendants resulting therefrom.

We think it unnecessary to decide whether the lands held by the partnership under leases from the state might have been included in the partition, or whether upon timely objection a partition could have been successfully resisted unless they were included. Defendants in error maintain that the leasehold estates constituted personal assets of the partnership in the possession of the executors consequent upon the failure of the surviving partner to furnish the bond required by statute as a condition to his retention of possession. The answers consented to a partition of the premises described in the petition, and this does not seem to have been the result of a mistake on the part of the defendants below. Whatever the general rule as to the necessity of the inclusion of all the property held in co-tenancy by the parties in a partition proceeding, we think that where the parties have thus consented to a partition of certain premises without any suggestion that other tracts are also held in similar co-tenancy, an objection on the ground of the exclusion of such other tracts ordinarily comes too late after judgment and the report of the commissioners, and especially so where there is no inherent objection to a separation of the different tracts. The lands held under lease consist, as we understand, of scattering tracts throughout the region more or less adjacent to the Clear Creek or Powder River ranches, and have been used by the partnership as a range for live stock. They are not otherwise connected with the Clear Creek lands; and cannot, we think, legitimately be said to be appurtenant to those lands, in the sense that water rights, ditches or other improvements are appurtenances. They may, we suppose, in a limited sense temporarily enhance the value of the use of

a ranch in connection with which the lessee uses them, and one of the commissioners says that he took the leases into consideration in his valuation of the Clear Creek properties. The length of time the leases have to run is not disclosed, and we know that under the statute state lands are leased for a period of five years only, with a right of renewal generally as to an area not exceeding four sections for another like period at a new appraisement. The right to the leases or to renewals does not depend upon the ownership of adjacent ranches or lands, and it is certain that lands so leased can add nothing intrinsically to the value of other lands owned by the lessee. They may, it is true, be of considerable advantage to such owner as a range for live stock, and thereby assist materially in a business of that kind. Their value in connection with a ranch consists in furnishing grazing facilities and providing a range, and much would therefore depend in that particular upon the number of cattle or live stock maintained by the owner.

But whatever may be the relation between the leased lands and the other property in respect to the values of either, we perceive no such inherent difficulty in making partition of the property described in the petition without including the leasehold premises, as to require a vacation of the judgment and report.

We are not convinced that plaintiffs in error were prejudiced by the fact that one of the counsel for plaintiffs below prepared the report for the signature of the commissioners. The latter had previously announced their conclusions in the presence of counsel for both parties, and then requested counsel to prepare their report. We do not understand that the fact is questioned that the report as finally prepared and signed conformed in all respects with the conclusions so previously announced. A copy of the report was handed to counsel for defendants and an opportunity afforded them to suggest changes, as we understand from the evidence. They, however, concluded not to take a position apparently consenting to the report, and declined to suggest anything as to its contents.

A careful examination of the evidence fails to convince us that the proceedings were unfairly conducted; but we think the trial court was justified in concluding that the exceptions had not been sustained. Our views upon the other points in the case render it unnecessary to pass upon the motion to amend the petition in error. Finding no error in the record, the judgment will be affirmed. *Affirmed.*

BEARD, Justice, and CRAIG, District Judge, concur.

HON. DAVID H. CRAIG, Judge of the Third Judicial District, sat in place of MR. JUSTICE SCOTT, who presided at the hearing in the court below.

ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

Upon the petition for rehearing it is again insisted on behalf of the plaintiffs in error that the rights of the intervening petitioner, Mrs. Magee, and her sister should have been considered in the partition proceedings and those rights determined. It is also seemingly urged that there is some uncertainty in the opinion previously delivered in this cause relative to the persons bound by the judgment appealed from. Since this court did not assume to decide, but expressly declined to decide whether there were any persons other than the immediate parties to the suit who were or would be concluded by the judgment, it may be true that such question is left uncertain, but not more so than in the case of any other judgment. We are not aware of any custom or rule rendering it necessary for the court pronouncing a judgment upon the issues between the parties to a suit, to include therein a statement or determination of its effect upon other designated persons.

The first suggestion of the necessity for additional parties came after the partition commissioners had made and filed their award. The trial court declined to admit the new parties, holding it unnecessary to decide what their rights

to the lands were under the trust deed to Field, or the effect upon them of the joint consent of Field, the trustee, and Pratt, the life tenant, to the decree of partition, or the extent to which the trustee and the life tenant represent and bind other parties. Upon error in this court, therefore, the question was, in this respect, whether the suggested new parties were necessary parties to a disposition of the cause upon the issues made upon the pleadings between the parties to the suit; and we held upon the grounds set forth in the opinion that they were not. Whether or to what extent such parties are or may be bound by the proceedings and judgment was not, therefore, a question involved in this cause. We cannot conceive that the former opinion, which fully explained our views, is reasonably capable of misconstruction. The statement in the opinion that only the parties to the suit and others "virtually represented by them" would be bound, merely expressed a general principle applicable to all judgments, and was not intended to indicate whether or not any person interested in this appeal was virtually represented in the suit. Counsel seems to regard the use of the word "virtually" as throwing a cloud of uncertainty about the question. But the employment of that word in speaking of the representation by a party of others not personally named or summoned as parties is not unusual. (Story's Eq. Jur., 656; 2 Black on Judg., Sec. 661; 15 Ency. Pl. & Pr., 629.) We do not believe that a reiteration of our views upon the questions in the case and the reasons therefor would serve any useful purpose.

It is now further suggested that we overlooked the undue haste with which the proceedings in the trial court were had. We do not think that the record discloses such haste as would tend to discredit the fairness of the proceedings or the award.

Rehearing will be denied.

Beard, J., concurs.

Scott, J., did not sit.